# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Patrick Hogarty,**

                Plaintiff,

v.

**Cherry Creek School District; Cherry Creek School District Board of Education; Angela Garland,** individually and in her official capacity as President for Cherry Creek School District Board of Education; **Anne Egan**, individually and in her official capacity as Director for District A of Cherry Creek School District Board of Education; **Christopher Smith**, individually and in his official capacity as Superintendent of Cherry Creek School District; **Angie Zehner**, individually and in her official capacity as Director of Middle Schools for Cherry Creek School District; **Courtney Smith**, individually and in her official capacity as Director of Human Resources for Cherry Creek School District; **Lissa Staal**, individually and in her official capacity as Principal of Campus Middle School; and **Ronald Garcia y Ortiz**, individually and in his official capacity as Executive Director of Equity, Culture, and Community Engagement for Cherry Creek School District,

                Defendants.

Case No. _____

## COMPLAINT

1. Cherry Creek School District violated Mr. Hogarty's First Amendment rights when they terminated his employment under false pretenses.

2. Disguised as a "budget cut," Mr. Hogarty's position as dean was eliminated because the district found Mr. Hogarty's pride in the United States of America incompatible with the district's political ideology that America is a systemically racist nation.

3. Like other school districts across the country, Cherry Creek School District has replaced the Bill of Rights with a "DEI Manifesto," and teachers, students, and parents are being silenced for standing up for the values that make America great.

4. Sixty years ago, Dr. Martin Luther King, Jr. called for a society that judged individuals not by the color of their skin but by the content of their character.

5. And, in fact, our Constitution and our anti-discrimination laws are color-blind. _Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll._, 600 U.S. 181, 278 (2023) (Thomas, J., concurring).

6. However, Defendants reject Dr. King's call, deny our Constitution and our laws, and have contempt for the principle that all citizens are equal before the law. Instead, they believe that anyone who denies that America is "systemically racist" and refuses to concede the "problem of whiteness" should lose their job.

7. Plaintiff Patrick Hogarty spent almost two decades as a teacher and administrator, holding steadfast to the belief in unity based on a shared American identity and legal equality, not division based on race.

8. For nearly three years at Campus Middle School in the Cherry Creek School District, Mr. Hogarty enriched the lives of his students through adherence to these principles.

9. The Cherry Creek School District and its long-time partner, the Pacific Educational Group, have sworn allegiance to the religion of race-based discrimination and woke equity dogma. Mr. Hogarty was ousted from his job because he refused to convert.

10. Mr. Hogarty now brings this suit under 42 U.S.C. § 1983 against Defendants for violating his First Amendment rights to freedom of speech and expression and for depriving him of his Constitutional right to speak against the District's anti-white and anti-American agenda.

## JURISDICTION AND VENUE

11. The Court has subject-matter jurisdiction under 28 USC § 1331 and 28 USC § 1343.

12. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

13. Plaintiff Patrick Hogarty ("Hogarty") is a former Dean of Students at Campus Middle School in Cherry Creek School District and is a current resident of Aurora, Colorado.

14. Defendant Cherry Creek School District is a political subdivision of the State of Colorado, with its principal office located at 4700 S. Yosemite St., Greenwood Village, Colorado 80111.

15. Defendant Cherry Creek School District Board of Education (the "Board of Education") is the governing body that oversees the Cherry Creek School District, with its principal office located at 4700 S. Yosemite St., Greenwood Village, Colorado 80111.

16. Defendants Cherry Creek School District and Board of Education are hereinafter referred to collectively as the "District."

17. Defendant Angela Garland is President of the Board of Education. She is sued individually and in her official capacity.

18. Defendant Anne Egan is the Director of District A (which includes Campus Middle School) for the Board of Education. She is sued individually and in her official capacity.

19. Defendant Christopher Smith is the current Superintendent of Cherry Creek School District. He is sued individually and in his official capacity.

20. Defendant Angie Zehner is the current Director of Middle Schools for the Cherry Creek School District. She is sued individually and in her official capacity.

21. Defendant Courtney Smith is the current Human Resources ("HR") Director for Cherry Creek School District. She is sued individually and in her official capacity.

22. Defendant Lissa Staal is the Principal of Campus Middle School. She is sued individually and in her official capacity ("Principal Staal").

23. Defendant Ronald Garcia y Ortiz is the Executive Director of Equity, Culture, and Community Engagement for Cherry Creek School District ("Equity Director"). He is sued individually and in his official capacity.

## BACKGROUND

### I. Patrick Hogarty

24. For 18 years, Mr. Hogarty has worked as either a teacher or school administrator.

25. From 2006 to 2014, Mr. Hogarty taught 9th and 10th grade Social Studies at Holy Cross High School in Flushing, New York.

26. From 2015 to 2018, Mr. Hogarty taught 7th and 8th grade Social Studies at Edna and John Mosley P-8 in Aurora, Colorado.

27. In 2018, Mr. Hogarty was promoted to Dean at W.C. Hinkley High School in Aurora, Colorado, and worked there until 2021.

28. In 2021, when offered his "dream job" as Dean of Students at Campus Middle School (the "School"), Mr. Hogarty jumped at the chance.

29. Mr. Hogarty's years of experience in teaching and administration made him a top candidate for the school's position.

30. During his time at the School, Mr. Hogarty consistently received positive performance reviews.

## II. The Cherry Creek School District

31. The Cherry Creek School District encompasses approximately 110 square miles and includes 43 elementary schools, 13 middle schools, and eight high schools.

32. The Cherry Creek School District is overseen by Defendant Christoper Smith, Superintendent, who is the Chief Executive Officer responsible for the overall management of the school district.

33. The Superintendent works closely with the District Leadership Team, which includes various assistant superintendents and directors overseeing specific areas such as educational operations, equity, culture, community engagement, finance, human resources, and more.

34. The Board of Education also governs the District, which sets policies and goals, approves the budget, and hires the Superintendent.

35. District employment policy (the "Policy") requires all employees to attend "Courageous Conversations" training within the first three years of employment, which focuses on "equity and disrupting whiteness" and is facilitated by Pacific Educational Group (the "Training").

36. In addition to the Training, the School requires faculty to meet in monthly "equity pods." Topics consistently discussed in these meetings include race and disproportionality.

37. The School encourages students to join "leadership groups" based on race. These groups meet approximately twice a month.

38. During meetings for all deans within the District, race and inequities are pushed as the focus of conversation, emphasizing "systemic oppression."

### III.   Courageous Conversations & PEG

39. Pacific Educational Group ("PEG") is a consulting firm founded in 1992 by Glenn Singleton to address race in educational systems in the United States, but has expanded its reach to also include higher education, corporations, non-profits, and law enforcement in the U.S., Canada, New Zealand, and Australia.

40. Per its own Frequently Asked Questions document, PEG "believe[s] systemic racism is the most devastating factor contributing to the diminished capacity of all people, and especially people of color and indigenous people, to achieve at the highest levels." *Frequently Asked Questions*, Pacific Educational Group, Tredyffrin/Easttown School District Website, https://perma.cc/M4M3-KBBU.

41. PEG's mission "is to transform systems into racially-conscious, socially just environments that nurture the spirit and infinite potential of all people, especially Black, Indigenous and People of Color to achieve at the highest levels, and live their most powerful and empowered lives." *Id.*

42. PEG characterizes its "Courageous Conversations" program as an "internationally-embraced process to discuss race explicitly in a manner that is intentional, compassionate and sustainable." *Id.*

43. Through its programming, PEG seeks to "transform environments to be more equitable, diverse and inclusive." *Id.*

44. PEG's Courageous Conversations program chastises "whiteness" and shames white individuals based on the color of their skin. *See Professional Development*, Cherry Creek Parent Advocacy Network, (last accessed Sep. 18, 2024) https://perma.cc/VQ6F-7C9R; *see also Beyond Diversity Courageous Conversations Handout*, Pacific Educational Group, (last accessed Jul. 30, 2024) https://perma.cc/Q3EG-7M65, at 31 (requiring participants to engage in a "White Privilege Exercise").

### IV. Patrick Hogarty Participates in Courageous Conversations Facilitated by the District and PEG

45. Following the District's Policy, Mr. Hogarty participated in Training on January 18, 2024.

46. At the start of the Training, agents of PEG and the District assured Hogarty that all conversations during the Training would remain confidential and not impact his employment.

47. At some point in the Training, Hogarty entered a virtual "breakout room" exercise with one other teacher and Defendant Equity Director.

48. The exercise focused on the questions of "What does it mean to be white?", "What experiences define whiteness?" and "How do you identify?"

49. When asked how he identifies, Hogarty told the group that he identifies as an American, that he loves his country, and that he believes it is the greatest country ever founded.

## V.  Hogarty Experiences the Aftermath of Nonconformity

50. On January 22, 2024, Principal Staal called Hogarty to her office and relayed to Hogarty that the Equity Director had complained to her about Hogarty's failure during the Training to acknowledge "what people of color go through" and Hogarty's refusal to admit that America is "systemically racist."

51. Principal Staal reassured Hogarty that she "had his back" and stated that there would be no HR involvement.

52. On January 25, 2024, Hogarty sent a follow-up email to Principal Staal and Angie Zehner sharing his concerns about the breach of confidentiality that had occurred by the Equity Director, emphasizing that the Training facilitators had assured Hogarty that he could speak freely and in confidence, without fear of reprisal on his employment.

53. Hogarty's January 25 email resulted in a conversation on February 2, 2024, between Hogarty, Principal Staal, and other District administrative officials, Dave Torfin and Dan Hanson.

54. In the February 2 meeting, Hogarty learned that the Equity Director had breached the promise of confidentiality and told Principal Staal that he believed Hogarty's comments in the Training had "racist undertones."

55. During the week of February 5, 2024, Hogarty again spoke with Principal Staal, who communicated to Hogarty that she had spoken to the Equity Director, and that Hogarty really doesn't "want to be on HR's bad side or Angie Zehner's."

56. A month later, on March 1, 2024, Principal Staal and the District's HR Director, Courtney Smith, informed Hogarty that his position was being cut for "budgetary reasons."

57. Specifically, the HR Director and Principal Staal communicated to Hogarty that the School would be "losing one Full Time Equivalent (FTE)" in the 2024-25 school year budget allocation—i.e., the budgetary equivalent of one full-time position.

58. Several days later, Hogarty told Principal Staal that he believed the "budgetary concerns" cited as the justification for his layoff were pretextual and that the true reason for his position's elimination involved his statements during the Training.

59. During this conversation, Hogarty reminded Principal Staal of her statements from their January 22 meeting, where she told him he was a "valued member of the staff" and that he "would remain so."

60. In response, on March 13, 2024, citing Hogarty's conversations with Principal Staal regarding his concerns about pretextual action on his employment, the District's HR Director placed Hogarty on administrative leave for "unprofessional conduct."

61. On May 17, 2024, Hogarty learned from another faculty member, Michelle Spears, that based on her own conversation with Principal Staal, Hogarty's position, purportedly cut for "budgetary reasons," would be reinstated before the following school year.

62. In fact, the District's own budgetary reports contradict Principal Staal and the HR Director's claim.

63. For the 2023-24 school year, the District allocated 116.66 FTE to the School.

64. For the 2024-25 school year, the District allocated 117.35 FTE to the School, resulting in an overall *increase* in FTE.

65. Accordingly, Principal Staal and the HR Director's claim of losing 1 FTE does not match with the District's official documentation.

66. On information and belief, the District temporarily eliminated Mr. Hogarty's position to remove him from the District in retaliation for his statements made during the Training because the District fundamentally disagreed with Mr. Hogarty's viewpoint.

## VI. The District's Coordinated Campaign to Root-Out Wrongthink

67. On information and belief, since at least 2014, the District has partnered with PEG to maintain its ongoing Policy requiring all new employees to participate in anti-white, race-based training. *Clients – School Districts*, Pacific Educational Group, via Web.archive.org, (last accessed Oct. 3, 2014), https://bit.ly/3y54XSr.

68. On information and belief, the District, through its Training, had a preconceived notion of what speech was and was not permissible.

69. On information and belief, the District falsely represented the confidential nature of the Training and had no intention of protecting employees who made statements contrary to its approved racist ideology.

70. In fact, on information and belief, the District deliberately sought to force its employees to adopt its racist, anti-white ideology and to expose and eliminate any employee who could not be successfully indoctrinated or pressured into conformance.

71. On information and belief, the District paid and continues to pay PEG substantial funds annually to conduct programming sought to indoctrinate and/or intimidate its employees into adopting or perpetuating its racist anti-white pedagogy.

72. These mandatory trainings are designed to shame persons based on the color of their skin and require the participants to at least publicly adopt the overtly racist ideology to avoid adverse consequences.

73. On information and belief, as further evidence of the incestuous relationship between PEG and the District, the former Assistant Superintendent for the District, Brooke Gregory, left his employment with the District to work for PEG.

74. This ongoing partnership between PEG and the District ensures overtly racist government-directed indoctrination of teachers and, through them, of the District's students.

75. On information and belief, Mr. Hogarty was targeted for removal because his Constitutionally-correct colorblind perspective on race exposed and undermined the District's racist indoctrination efforts.

## CLAIMS FOR RELIEF

### Count I: Violation of the First Amendment – Compelled Speech
### (42 U.S.C. § 1983)

76. Mr. Hogarty repeats paragraphs 1-75.

77. The First Amendment, applicable to the states and local municipalities via the Fourteenth Amendment, requires the District and its agents to respect and protect "an individual's right to speak freely and the right to refrain from speaking

at all." *Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (quotations omitted).

78. The Supreme Court "has consistently prohibit[ed] the government from telling people what they must say." *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006)).

79. To make a claim for compelled speech, "a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some governmental action." *Id.*

80. Mr. Hogarty's statements relate to his belief that America is not systemically racist, which is a matter of public concern.

81. Mr. Hogarty's statements did not significantly disrupt school operations or the educational process.

82. On information and belief, the District, by and through its agents, sought to compel Mr. Hogarty to apologize for his "whiteness" and admit that America is "systemically racist."

83. Mr. Hogarty vehemently objects to the notion that America is "systemically racist" and does not believe he must apologize for being white.

84. Despite representing the Training as a confidential "safe space," the District's Equity Director reported Mr. Hogarty's statements as having racist undertones and on information and belief, sought to have Mr. Hogarty removed from his position.

85. Despite being assured by Principal Staal that his views and statements would not result in adverse employment action, Mr. Hogarty was informed that the School would be eliminating his position, ostensibly due to "budgetary reasons."

86. The District's own documentation reveals the justification for the adverse action to be false.

87. When Mr. Hogarty challenged the pretextual justification for losing his job, the District immediately retaliated by placing him on administrative leave for "unprofessional conduct."

88. The District, by and through its agents, sought to compel Mr. Hogarty to align and affirm overtly racist statements and beliefs to which he objected, and when he refused to do so, had his position eliminated and placed him on administrative leave.

89. Accordingly, Mr. Hogarty's statements were a motivating factor in the Defendants' decision to terminate him.

90. Each of the Defendants violated Mr. Hogarty's First Amendment rights by seeking to compel his speech to align with their desired ideology, and further violated his rights by taking adverse employment action against him.

91. As a result of the Defendants' actions, Mr. Hogarty has suffered economic damages, reputational harm, and emotional distress.

### COUNT II: Violation of the First Amendment – Viewpoint Discrimination
### (42 U.S.C. § 1983)

92. Mr. Hogarty repeats paragraphs 1-91.

93. Mr. Hogarty's statements relate to his belief that America is not systemically racist, which is a matter of public concern.

94. The District disagreed with Mr. Hogarty's views on systemic racism and his statements made during the Training. The District-approved view was that America is systematically racist and that there is a problem with, and shame attached to, being "white." The District viewed Mr. Hogarty's Constitutionally correct colorblind views as disruptive and dangerous.

95. Mr. Hogarty suffered adverse employment action by being singled out for his statements, terminated on the pretext, and placed on administrative leave for questioning all this.

96. Mr. Hogarty's statements and views were a motivating factor in the District's decision to eliminate his position and take other adverse actions against him.

97. Mr. Hogarty's statements and views did not significantly disrupt school operations or the educational process.

98. Each of the Defendants violated Mr. Hogarty's First Amendment rights by retaliating against him and terminating his employment because of his viewpoint on matters of public concern and because he refused to accept or transmit their overtly racist and anti-American views and ideology.

99. As a result of the Defendants' actions, Mr. Hogarty has suffered economic damages, reputational harm, and emotional distress.

## DEMAND FOR RELIEF

100. Mr. Hogarty respectfully requests that the court:

a. Declare that Defendants violated 42 USC § 1983 in violating Hogarty's First Amendment rights;

b. Permanently enjoin Defendants, their successors in office, and anyone in concert or participation with them, from compelling or suppressing speech through mandatory race-related training;

c. Order the Board to reinstate Mr. Hogarty, with back-pay, to his position at the School;

d. Order Defendants to pay damages, including punitive damages, to the extent to be proven at trial;

e. Order the District to revise its employment policies to explicitly protect its employees' First Amendment rights to disagree with viewpoints expressed in its training relating to race;

f. Appoint a court monitor to oversee the District in all decisions relating to its race-based training policies to ensure its adherence to the Court's order;

g. Award costs and attorneys' fees; and

h. Grant all other relief that the Court deems just, proper, or equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted.

Dated: September 25, 2024

/s/ Stephen McKenna

Stephen McKenna, CO Bar #28744
5794 E. Powers Ave.
Greenwood Village, CO 80111
Telephone: (720) 850-1115
Email: steve@themckennaproject.com

Ian Prior
Laura Stell
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (202) 836-7958
Email: ian.prior@aflegal.org
         laura.stell@aflegal.org

*Counsel for Plaintiff Patrick Hogarty*