**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-02650-RMR-STV

PATRICK HOGARTY,

        Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT, *et al*.

        Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION ....................................................................................... 1

RELEVANT FACTUAL ALLEGATIONS ......................................................... 1

ARGUMENT ............................................................................................. 3

    **A.** **Dismissal of the Board of Education** ................................................. 3

    **B.** **Defendants' Argument that Hogarty's First Amendment Claims Should Be Dismissed Imposes an Incorrect Standard and Ignores Tenth Circuit and Supreme Court Precedent Prohibiting Government-Compelled Speech.** ............................................................................................. 3

        **1.** *Garcetti/Pickering* **does not apply to compelled speech.** .......................... 3

        **2.** **US Supreme Court precedent imposes a higher burden for the government to compel, rather than censor, speech.** ................................... 4

    **C.** **Under the Correct Standard, Hogarty Viably Pleads a Violation of His First Amendment Right to Be Free From Government-Compelled Speech.** . 7

        **1.** **Hogarty pleads speech.** ...................................................................... 8

        **2.** **Hogarty alleges that he objected to calling his country "systemically racist."** ....................................................................................... 8

        **3.** **Hogarty plausibly pleads, and Defendants admit, that Defendants sought to compel him to profess a belief in "systemic racism."** .............. 9

    **D.** **The Individual Defendants Are Not Entitled to Qualified Immunity.** ............. 10

        **1.** **Defendants Garland, Egan, Smith, and Zehner's control and supervisory authority over District policy and practice "affirmatively links" to Hogarty's alleged First Amendment violation to establish § 1983 liability.** ............................................................................. 10

        **2.** **Hogarty sufficiently alleges a violation of his clearly established First Amendment right to be free from compelled speech.** ............................... 13

**CONCLUSION** ........................................................................................ 15

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ............................................................................... 5, 6, 9

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ..................................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 10

*Hazelwood Sch. Dist. v. Kuhlmeier*,
    484 U.S. 260 (1988) ....................................................................................... 7

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    585 U.S. 878 (2018) ................................................................................ 4, 5, 6

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
    487 U.S. 781 (1988) ....................................................................................... 5

*Rumsfeld v. Forum for Acad. & Inst. Rts, Inc.*,
    547 U.S. 47 (2006) ....................................................................................... 13

*Shelton v. Tucker*,
    364 U.S. 479 (1960) ....................................................................................... 6

*Simon & Schuster, Inc. v. Members of State Crime Victims Bd.*,
    502 U.S. 105 (1991) ....................................................................................... 4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) ....................................................................................... 6

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994) .................................................................................... 4, 6

*West Va. Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ....................................................................................... 4

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ....................................................................................... 7

**OTHER FEDERAL CASES**

*Axson-Flynn v. Johnson*,
    356 F.3d 1277 (10th Cir. 2004) ............................................................. 13

*Brown v. Montoya*,
    662 F.3d 1152 (10th Cir. 2011) ............................................................. 10

*Burke v. Regalado*,
    935 F.3d 960 (10th Cir. 2019) ............................................................... 10

*Colorado v. Griswold*,
    99 F.4th 1234 (10th Cir. 2024) ............................................................... 4

*Corder v. Lewis Palmer Sch. Dist. No. 38*,
    566 F.3d 1219 (10th Cir. 2009) .......................................................... 7, 13

*Cressman v. Thompson*,
    798 F.3d 938 (10th Cir. 2015) ............................................................ 4, 8

*Currier v. Doran*,
    242 F.3d 905 (10th Cir.2001) ............................................................... 10

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) ............................................................. 11

*Flores v. Victory Preparatory Acad.*,
    411 F. Supp. 3d 1149 (D. Colo. 2019) ............................................. 10, 13

*Foote v. Spiegel*,
    118 F.3d 1416 (10th Cir. 1997) ............................................................. 13

*Gallagher v. Shelton*,
    587 F.3d 1063 (10th Cir. 2009) ............................................................. 10

*Herrera v. City of Albuquerque*,
    589 F.3d 1064 (10th Cir. 2009) ............................................................. 10

*McNellis v. Douglas Cnty. Sch. Dist.*,
    116 F.4th 1122 (10th Cir. 2024) .............................................................. 3

*Peterson v. Jensen*,
    371 F.3d 1199 (10th Cir. 2004) ............................................................. 10

*Rome v. Romero*,
    225 F.R.D. 640 (D. Colo. 2004) ............................................................. 15

*V–1 Oil Co. v. Means*,
    94 F.3d 1420 (10th Cir.1996) ................................................................... 13

*VDARE Found. v. City of Colo. Springs,*
    11 F.4th 1151 (10th Cir. 2021)........................................................... 10, 14

**STATE CASES**

*Vlaming v. West Point Sch. Bd.*,
    302 Va. 504 (2023)............................................................................... 5, 7

**OTHER AUTHORITIES**

*Systemic*, MERRIAM-WEBSTER.COM, https://perma.cc/V2B4-9YEF .................................... 8

## INTRODUCTION

In response and opposition to Defendants' Motion to Dismiss Plaintiff's Complaint ("MTD"), ECF No. 18, filed December 13, 2024, Plaintiff Patrick Hogarty ("Plaintiff" or "Hogarty") states as follows:

Plaintiff alleges that Defendants, in the context of District-mandated "Courageous Conversations" training (the "Training"), sought to compel him to echo their belief that America is "systemically racist," and punished him when he failed to do so. Hogarty further alleges that Defendants violated his First Amendment right when Defendants demanded he recite these beliefs despite his objection. Accepting these allegations as true and viewing them in the light most favorable to Plaintiff, as well as drawing all reasonable inferences in Plaintiff's favor, the Court should find that Hogarty has plausibly alleged claims for relief. Moreover, Plaintiff has plausibly pled § 1983 liability against the Individual Defendants by demonstrating a clear violation of Hogarty's First Amendment right, which was clearly established at the time of the violation. Accordingly, the Court should deny the Defendants' MTD.

## RELEVANT FACTUAL ALLEGATIONS

Hogarty's Complaint alleges that Hogarty began working as a Dean at Campus Middle School (the "School") in the Cherry Creek School District (the "District") in 2021. Compl. ¶ 28. District policy requires all employees to attend "Courageous Conversations" training focused on "equity and disrupting whiteness" through a "process to discuss race explicitly in a manner that is intentional, compassionate, and sustainable." *Id*. ¶¶ 34, 42. At the start of the January 18, 2024, Training, Hogarty was assured "that all conversations

during the Training would remain confidential and would not impact his employment." *Id.* ¶¶ 45–46.

During a Training exercise with another staff member and Defendant Ronald Garcia Y Ortiz ("Garcia"), the District's Executive Director of Equity, Culture, and Community Engagement ("Equity Director"), focused on questions of identity and what it means to be, and experience, "whiteness," Hogarty was asked how he identifies. *Id.* ¶¶ 47–49. Hogarty responded, "that he identifies as an American, that he loves his country, and that he believes it is the greatest country ever founded." *Id.*

Following the Training, Principal Staal called Hogarty to her office, stating that the Equity Director had complained to her about Hogarty's failure (during the Training) "to acknowledge 'what people of color go through' and refusal to admit that America is 'systemically racist.'" *Id.* ¶ 50. During the meeting, "Principal Staal reassured Hogarty that she 'had his back' and stated that there would be no HR involvement." *Id.* ¶ 51.

On January 25, 2024, Hogarty sent a follow-up email to Principal Staal and Angie Zehner, the Director of Middle Schools, expressing concern over the breach of promise that "he could speak freely and in confidence, without fear of reprisal on his employment." *Id.* ¶ 52. In early February, Hogarty learned that Equity Director Garcia had "told Principal Staal that he believed Hogarty's comments in the Training had 'racist undertones'" and was told by Principal Staal that he "really doesn't 'want to be on HR's bad side or Angie Zehner's.'" *Id.* ¶¶ 54–55.

On March 1, 2024, Staal and District Human Resources Director ("HR Director") Courtney Smith "informed Hogarty that his position was being cut for 'budgetary reasons'" because "the School would be 'losing one Full Time Equivalent (FTE)' in the 2024–25

school year budget allocation." Compl. ¶¶ 56–57. After Hogarty told Principal Staal that he "believed the 'budgetary concerns' cited as the justification for his layoff were pretextual" and that he believed his position was being eliminated because of his failure to acknowledge "systemic racism," he was placed on paid administrative leave, purportedly for "unprofessional conduct" on March 13, 2024. *Id.* ¶¶ 58–60. Hogarty later learned that Principal Staal and HR Director Smith's claim of losing one FTE position did not match the District's official documentation. *Id.* ¶¶ 61-65. Hogarty alleges that he "was targeted for removal because his Constitutionally-correct colorblind perspective on race exposed and undermined the District's racist indoctrination efforts." *Id.* ¶ 75.

## <u>ARGUMENT</u>

### A.    Dismissal of the Board of Education

In light of the Defendants' acknowledgment that the Cherry Creek School District is the corporate entity that encompasses the Board, Plaintiff does not contest the dismissal of the Board of Education. MTD at 5.

### B.    Defendants' Argument that Hogarty's First Amendment Claims Should Be Dismissed Imposes an Incorrect Standard and Ignores Tenth Circuit and Supreme Court Precedent Prohibiting Government-Compelled Speech.

#### 1.    *Garcetti/Pickering* does not apply to compelled speech.

Defendants concede that "[t]he Tenth Circuit has not considered whether public employees asserting compelled speech and viewpoint discrimination claims do so via a First Amendment retaliation theory." MTD at 5. They then attempt to shoehorn Hogarty's claims of compelled speech and viewpoint discrimination into the five-element "*Garcetti/Pickering* test applicable to employee Free Speech claims." MTD at 6 (citing *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1133 (10th Cir. 2024)). This is in

3

error. In the Tenth Circuit, "[t]o state a compelled-speech claim under the First Amendment, 'a party must establish (1) speech; (2) to which [the plaintiff] objects; that is (3) compelled by some governmental action.'" *Colorado v. Griswold*, 99 F.4th 1234, 1240 (10th Cir. 2024) (quoting *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *VDARE*, 11 F.4th at 1158 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). As each of these elements is plausibly pled, Defendants' arguments that "Hogarty's First Amendment retaliation claims should be dismissed" are without merit, and the MTD should be denied. MTD at 5-12.

### 2. US Supreme Court precedent imposes a higher burden for the government to compel, rather than censor, speech.

As the US Supreme Court has observed, government efforts to "suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion ... 'rais[e] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace.'" *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641 (1994) (quoting *Simon & Schuster, Inc. v. Members of State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)). Because compelled speech tears at the heart of the right to free speech, the government has a higher burden to justify it than when it seeks to punish, or censor protected speech. "When a public employer does not simply restrict potentially disruptive speech but commands that its employees mouth a message on its own behalf, the calculus is very different." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 908 (2018). Under this calculus, "a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence.'" *Id.* at 893 (quoting *West Va. Bd. of Educ. v.*

*Barnette*, 319 U.S. 624, 633 (1943)); *see also Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 795-97 (1988) (rejecting a "deferential test" for compelled-speech claims). As stated by the Supreme Court in *Janus*, "we have never applied *Pickering* in such a case." 585 U.S. at 903.

A recent decision by the Supreme Court of Virginia upholding a teacher's right to refuse to use pronouns that did not conform to a student's claimed sex (as opposed to biological) is instructive. As in that case, Hogarty's "principal theory of recovery asserts a 'compelled speech' claim." *Vlaming v. West Point Sch. Bd.*, 302 Va. 504, 565 (2023). "This type of claim challenges an attempt by the government to 'compel an individual to create speech [he] does not believe and to 'utter what is not in [his] mind' about a question of political and religious significance.'" *Id*. (quoting *303 Creative LLC v. Elenis*, 600 U.S. 570, 578-79 (2023) (citations omitted)). As noted in *Vlaming*, "[f]orcing creedal conformity is more pernicious than silencing dissent because the former seeks to monopolize the marketplace of ideas by making everyone in the market say the same thing about the same idea. *Id*. at 566–567 (quoting *Janus*, 585 U.S. at 892).

Hogarty, like Vlaming, alleges that he was retaliated against "not because of what he said but because of what he refused to say." *Vlaming*, 302 Va. at 565. Vlaming used the student's preferred name but generally avoided using third-person pronouns when referring to the student. If anything, Defendants' attempt to compel Hogarty to state opinions about systemic racism that he did not hold is even more pernicious than the attempt to compel Vlaming to use preferred pronouns. First, Vlaming's speech took place in the classroom and hallways and was directed at students. *Id.* at 570. Hogarty's speech was in response to questions he was asked in a District-compelled Courageous

Conversations training with other staff members that he was told "would remain confidential." Compl. ¶ 46. The salient point, however, is that the school districts, both here and in *Vlaming*, sought to compel plaintiffs to say something that went against their core beliefs. In such cases, "courts apply 'rigorous scrutiny' to any effort by the government to 'compel speakers to utter or distribute speech bearing a particular message.'" *Turner*, 512 U.S. at 642.

These principles are "nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)). Teachers, administrators, and students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Under these precedents, Cherry Creek cannot compel Hogarty to "speak in ways that align with [the District's] views" in a way that defies his "conscience about a matter of major significance." *303 Creative*, 600 U.S. at 602-03. Defendants argue that Hogarty was merely airing unprotected personal grievances in complaining to his principal and others about being characterized as "racist" by the Equity Director and by the breach of confidentiality. MTD at 8; *see also* MTD at 4 (citing Compl. ¶ 54). This argument attempts to elide past the fact that Hogarty's "principal theory of recovery asserts a 'compelled speech' claim," arising from Defendants' attempts to compel him to state, against his beliefs, that America is a "systemically racist" country. As with "gender identity" and the use of preferred pronouns, questions of "systemic racism" and "equity and disrupting whiteness" (Compl. ¶ 34) are "sensitive political topics" that occupy the "highest rung of the hierarchy of First Amendment values" meriting "special protection." *Cf. Janus,* 585 U.S. at 914. "Punishing a government employee for improper speech may or may not be

constitutionally violative, but it is 'not easy to imagine a situation in which a public employer has a legitimate need to demand that its employees recite words with which they disagree.'" *Vlaming*, 302 Va. at 571 (quoting *Janus*, 585 U.S. at 908). The Defendants' distinction undermines the School Board's argument that *Garcetti*'s official-duties doctrine warrants the dismissal of Hogarty's compelled-speech claim. This Court should "find *Garcetti*'s official-duties doctrine inapplicable to [Hogarty's] allegations…. [and hold that] 'where the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message.'" *Vlaming*, 302 Va. at 742 (quoting *Wooley v. Maynard*, 430 U.S. 795, 717 (1977)). The District cannot avoid this constitutional prohibition by simply declaring it Hogarty's 'official duty' to courier the District's ideological view of America's "systemic racism."

As a final note, Defendants' citation to *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1229 (10th Cir. 2009) is misplaced and a mischaracterization of the applicable standard. *Corder*'s rationale hinges on the speech at issue falling within the narrow category of "school-sponsored ... expressive activit[y] that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." *Id.* (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988)). Hogarty's speech does not fall within this category; therefore, the *Corder* standard is inapplicable here.

**C.    Under the Correct Standard, Hogarty Viably Pleads a Violation of His First Amendment Right to Be Free From Government-Compelled Speech.**

Applying the correct standard for assessing Hogarty's compelled speech claim, the complaint plausibly pleads "(1) speech; (2) to which he objects; that is (3) compelled by

some governmental action.'" *Cressman,* 798 F.3d at 951.

### 1.    Hogarty pleads speech.

Hogarty alleges that Equity Director Garcia "complained to [Principal Staal] about Hogarty's 'failure during the Training to 'acknowledge 'what people of color go through' and Hogarty's refusal to admit that America is 'systemically racist.'" Compl. ¶ 50. In the MTD, Defendants admit that this was speech: "Hogarty's <u>speech</u> related to his identification as an American, and his refusal to acknowledge racism and systemic racism ….Also, all the <u>speech</u> about which Hogarty complains was made while he was working, or via District email." MTD at 7 (emphasis added).

### 2.    Hogarty alleges that he objected to calling his country "systemically racist."

Hogarty also alleges that he objected to the district-mandated ideological view of America's purported "systemic racism." Defendants claim that Hogarty "would not acknowledge 'what people of color go through,' and refused 'to admit that America is 'systemically racist.'" MTD at 7 (quoting Compl. ¶ 50). In fact, Hogarty does not allege that he failed to acknowledge what people of color go through. Rather, he alleges that Equity Director Garcia interpreted his failure to believe that racism is "systemic" in America (*i.e.,* that it is "fundamental to a predominant social, economic, or political practice") as a failure to adequately acknowledge "what people of color go through" when he violated Hogarty's confidentiality and complained to Principal Staal that his answers to the private questions had "racist undertones." Compl. ¶¶ 50, 54; *Systemic*, MERRIAM-WEBSTER.COM, https://perma.cc/V2B4-9YEF.

     **3.**    **Hogarty plausibly pleads, and Defendants admit, that Defendants sought to compel him to profess a belief in "systemic racism."**

As noted above, Hogarty pleads that he was called into his principal's office and told that the Equity Director had complained about his failure to acknowledge "what people of color go through" and "refusal to acknowledge that America is 'systemically racist.'" Compl. ¶ 50. Defendants also acknowledge as much in their MTD, arguing that "[t]he District has a significant interest in promoting equity and denouncing racism" and that it "was particularly important that Hogarty express equitable views consistent with the District's Training, policies, and practices, as he was a Dean of Students who worked directly with a diverse body of students daily." MTD at 10. Defendants further argue that "Hogarty's failure to denounce racism, and his refusal to acknowledge systemic racism, ran afoul of the District's legitimate interests" and "[b]ecause the District's interest in promoting effective administrative administration and equity outweighs Hogarty's qualified free speech rights, *Garcetti/Pickering* weighs heavily in Defendants' favor." *Id*.

As discussed above, *Garcetti/Pickering* is inapplicable to Hogarty's compelled speech claim. However, in arguing that "[t]he District's interest in inclusive education outweighs Hogarty's rights" (MTD at 9-10), Defendants concede their intent "to 'compel [Hogarty] to create speech [he] does not believe" and to 'utter what is not in [his] mind' about a question of political and religious significance.'" *303 Creative*, 600 U.S. at 578-79. Because Defendants cannot hide behind the "school-sponsored speech" exception as articulated in *Corder*, any "pedagogical interest" the school may have had in regulating Hogarty's speech holds no weight here. Defendants' admitted intention to compel Hogarty to elicit particular viewpoints enshrines this case under longstanding Supreme Court and Tenth Circuit precedent prohibiting government-compelled speech.

Accordingly, Hogarty has adequately pleaded the applicable elements for his First Amendment claim, and the MTD should be denied.

**D.    The Individual Defendants Are Not Entitled to Qualified Immunity.**

Plaintiff acknowledges that to avoid qualified immunity, he must allege a violation of a constitutional right that "was clearly established at the time of the defendant's alleged misconduct." MTD at 12 (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009)). However, by raising the qualified immunity defense on a 12(b)(6) motion, the Defendants are subjected to "a more challenging standard of review than would apply on summary judgment." *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1155 (D. Colo. 2019) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As set forth below, Hogarty has alleged sufficient facts entitling him to relief.

**1.    Defendants Garland, Egan, Smith, and Zehner's control and supervisory authority over District policy and practice "affirmatively links" to Hogarty's alleged First Amendment violation to establish § 1983 liability.**

Defendants oversimplify the standard for establishing personal liability under § 1983. Hogarty has pleaded an "affirmative link…between the constitutional deprivation" and Defendants Garland, Egan, Smith, and Zehner's ("Supervisory Defendants") "exercise of control or direction" and/or their "failure to supervise" to establish § 1983 liability. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (internal citations omitted). Hogarty "can show such a link by establishing the [Supervisory Defendants] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy, or the establishment or utilization of an unconstitutional policy or custom, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (quoting *Brown v. Montoya*,

662 F.3d 1152, 1164 (10th Cir. 2011); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)) (cleaned up). Hogarty has done so.

Hogarty alleges that he was singled out, placed on administrative leave, and lost his job because "the district found Mr. Hogarty's pride in the United States of America incompatible with the district's political ideology that America is a systemically racist nation." Compl. ¶ 2. He also alleges that "[l]ike other school districts across the country, Cherry Creek School District has replaced the Bill of Rights with a 'DEI Manifesto,' and teachers, students, and parents are being silenced for standing up for the values that make America great." *Id.* ¶ 3. And that the District, through Defendants, engaged in a "Coordinated Campaign to Root-Out Wrongthink" and "targeted [him] for removal because his Constitutionally correct, colorblind perspective on race exposed and undermined the District's racist indoctrination efforts." *Id.* ¶¶ 67–75.

Defendants Garland and Egan are, respectively, the President and District A Director of the Cherry Creek School District Board of Education, the governing body that oversees the District. *Id.* ¶¶ 15–18. Defendant Christopher Smith, the District Superintendent, oversees and is "responsible for the overall management of the school district." *Id.* ¶¶ 19, 32. Superintendent Smith "works closely with the District Leadership Team, which includes various assistant superintendents and directors overseeing specific areas such as educational operations, equity, culture, community engagement, finance, human resources, and more." *Id.* ¶ 33. Defendant Zehner is the Director of Middle Schools for the District. *Id.* ¶ 20. Hogarty sent Zehner and Principal Staal an email on January 25, 2024, sharing concerns about the breach of confidentiality by Equity Director

Garcia, and Principal Staal warned Hogarty afterward that he "really doesn't want to get on the HR's bad side or Angie Zehner's." *Id*. ¶¶ 52, 55.

Defendants claim that Hogarty "fails to allege that individual Board of Education members Garland or Egan were involved in anything related to PEG, [Hogarty's] employment at the District, or the alleged retaliation." MTD at 13. But they acknowledge "that the Board [of Education] is tasked with all employment decisions in the District." *Id*. Hogarty also alleges that the Board "governs the District" and "sets policies and goals, approves the budget and hires the Superintendent." Compl. ¶ 34. One of those policies "requires all employees to attend 'Courageous Conversations' training within three years of employment, which focuses on 'equity and disrupting whiteness.'" *Id*. ¶ 35. Further, Defendants admit that "[i]t was particularly important that Hogarty express equitable views consistent with the District's Training, policies and practices." MTD at 10. The Board's responsibility for setting policy, and Defendants' admission that compelling Hogarty to express "equitable views consistent with [those] polices and practices," adequately alleges the involvement of Directors Garland and Egan.

Similarly, Superintendent Smith is "the chief executive responsible for the overall management of the school district," and Angie Zehner is the District's Director of Middle Schools. Both are responsible for implementing District policies and practices such as the Courageous Conversations training, which sought to compel Plaintiff to speak against his firmly held pride in being a citizen of the United States of America and belief that it "is the greatest country ever founded." These allegations, combined with their reasonable inferences, demonstrate that the Supervisory Defendant's failure to supervise and effectively manage the District's policy as it pertains to its DEI Trainings "affirmatively

link[s]" to the alleged First Amendment violation sufficient to establish § 1983 liability against Defendants Garland, Egan, Smith, and Zehner.

> **2.    Hogarty sufficiently alleges a violation of his clearly established First Amendment right to be free from compelled speech.**

As noted above, Hogarty's constitutional right against compelled speech is adequately alleged. *See supra* at § C. That right was also clearly established in 2024 when Defendants' violation took place. "For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) (citing *V–1 Oil Co. v. Means*, 94 F.3d 1420, 1423 (10th Cir.1996)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Over fifteen years ago, the Tenth Circuit found that "[t]he Supreme Court has long held that the First Amendment 'prohibits the government from telling people what they must say.'" *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1230 (10th Cir. 2009) (quoting *Rumsfeld v. Forum for Acad. & Inst. Rts, Inc.*, 547 U.S. 47, 61 (2006)). Additionally, this district has previously found that compelled speech by a school, such as forcing a student to recite the school pledge, sufficiently meets the "clearly established" standard for purposes of qualified immunity. *Flores*, 411 F. Supp. 3d at 1158; *see also Axson-Flynn v. Johnson,* 356 F.3d 1277, 1300 (10th Cir. 2004) (holding that the pretextual compelling of speech of a student constitutes the violation of a clearly established right).

Defendants attempt to avoid this by stating that Hogarty "cannot show that any of the individuals violated his clearly established rights as there is no case law prohibiting government employers from denouncing racism and promoting equity." MTD at 15. Citing *VDARE Found. v. City of Colo. Springs*, Defendants claim that it "instructs that Garcia's comments are appropriate speech for a government official," and that, "in light of VDARE, [they] were not on notice that their conduct violated Hogarty's rights." 11 F.4th 1151, 1168, 1174 (10th Cir. 2021); MTD at 15. This claim is unavailing.

First, *VDARE* is not a compelled speech case. Although involving the First Amendment, *VDARE* turned on questions of state action and government speech, asking whether Colorado Springs violated VDARE's constitutional right to free speech by issuing a public statement that resulted in VDARE losing its venue for a long-planned event. *Id.* at 1157. Affirming the district court's dismissal of VDARE's claims, the Court classified the statement as "government speech" that "didn't plausibly exceed the bounds of constitutionally permissible speech by threatening the Resort." *Id.* at 1172. Contrary to Defendants assertions, *VDARE* does not "instruct[] that Garcia's comments are appropriate speech for a governmental official," nor does it justify retaliation against an employee for failure to speak in accordance with the government's desired viewpoint. MTD at 15. In short, Defendants' reliance on *VDARE* is misplaced; the Tenth Circuit has found that compelled speech in the school context is a "clearly established" right for purposes of qualified immunity.

To that end, the actions and statements of Defendants Staal and Smith in the wake of Hogarty's termination demonstrate their knowledge of Hogarty's clearly established First Amendment rights. When pressed about the elimination of his position and its

connection to the statements made in the Training, Defendants falsely claimed the non-renewal of his contract was the result of a "budget cut." Compl. ¶ 2. The District's own budgetary reports contradict this claim, showing "an overall increase in FTE [Full Time Equivalent]" employee allocations for the 2024-2025 school year. *Id*. ¶¶ 61-65. Even further, when Hogarty continued to press the legitimacy of this justification, Smith placed Hogarty on administrative leave for "unprofessional conduct." Compl. ¶ 60. This subterfuge, assumed as true here, raises the plausible suspicion that the Individual Defendants were aware of the legal ramifications of terminating Hogarty for the statements he made (and refused to make) and therefore manufactured a pretextual justification to retaliate against him.

For these reasons, the court should find that (1) Hogarty has properly alleged a compelled speech violation of the First Amendment and (2) that this right is "clearly established" for purposes of qualified immunity.[1]

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be denied. Should the Court decide otherwise, Plaintiff respectfully requests the opportunity to amend his Complaint to plead additional facts in support of his claims.

---

[1] Further, Defendants' assertion of qualified immunity, if granted, does not fully dispose of the claims against the Individual Defendants because Hogarty has alleged "official capacity" claims, as well as claims for declaratory and injunctive relief. *See Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004) (articulating the inapplicability of qualified immunity to official-capacity claims, as well as those for declaratory and injunctive relief). Thus, granting qualified immunity would not resolve all claims against the Individual Defendants.

Respectfully submitted,


/s/ Stephen McKenna
Stephen McKenna
5794 E. Powers Ave.
Greenwood Village, CO 80111
720 850-1115
steve@themckennaproject.com

Ian Prior
Laura Stell
America First Legal
611 Pennsylvania Ave SE #231
Washington, DC 20003
(910) 541-1901
Ian.prior@aflegal.org
Laura.stell@aflegal.org

Attorneys for Plaintiff Patrick Hogarty

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2025, a copy of the foregoing was served via the

District Court's Electronic Case Filing system on the following:

Mary Gray
Jon Fero
Semple, Farrington, Everall & Case, P.C.
1120 Lincoln Street, Suite 1308
Denver, Colorado 80203
mgray@semplelaw.com
jfero@semplelaw.com

By: /s/ Stephen McKenna